Thomas A. Saenz (Cal. Bar No. 159430)
Luis Lozada (Cal. Bar No. 344357)
Eduardo Casas (Cal. Bar No. 346859)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
       llozada@maldef.org
       ecasas@maldef.org

*Attorneys for Plaintiff and
the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ISMAEL ANTONIO RODRIGUEZ PEREZ, <br><br> Plaintiff, <br><br> v. <br><br> FIRST TECH FEDERAL CREDIT UNION, <br><br> Defendant. | Case No.: 3:23-CV-06704-TSH <br><br> Hon. Thomas S. Hixson <br><br> **PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Hearing Date: October 3, 2024 <br> Hearing Time: 10:00 A.M. <br> Location: Courtroom E – 15th Floor |

# NOTICE OF MOTION AND UNOPPOSED MOTION

PLEASE TAKE NOTICE that on October 3, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the above-named Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Thomas S. Hixson presiding, Plaintiff Ismael Antonio Rodriguez Perez, individually and as class representative on behalf of the Class, will, and hereby, does move for the following relief with respect to the Settlement Agreement and Release with Defendant First Tech Federal Credit Union ("First Tech"):

1. That the Court certify, for settlement purposes only, the settlement classes under Federal Rule of Civil Procedure 23(a) and (b)(3);

2. That the Court appoint Plaintiff as Class Representative;

3. That the Court appoint Plaintiff's attorneys as Class Counsel;

4. That the Court grant preliminary approval of the Settlement;

5. That the Court approve mailing to the Class Members the proposed Class Notice;

6. That the Court appoint RG2 Claims Administration LLC as the Settlement Administrator; and

7. That the Court schedule a hearing for final approval of the Settlement.

This Motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair, reasonable, and adequate to the Class; and should be preliminarily approved, as discussed in the attached memorandum.

This Motion is based on: this notice; the following memorandum in support of the Motion; the Declaration of Luis L. Lozada and attached Settlement Agreement and Release; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the Motion. First Tech does not oppose this Motion.

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1
II. FACTUAL AND PROCEDURAL BACKGROUND.................................................2
III. PROPOSED SETTLEMENT ......................................................................................2
   A. The Settlement Classes ..........................................................................................2
   B. Settlement Overview..............................................................................................3
      1. *Corrective Action* ............................................................................................3
      2. *Monetary Relief*...............................................................................................3
   C. Distribution to Class Members .............................................................................4
   D. Cy Pres Distribution of any Unclaimed Settlement Funds ................................4
   E. Notice to Class Members .......................................................................................4
   F. Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award ............................................................................4
IV. ARGUMENT.................................................................................................................5
   A. Certification of the Class is Proper Under Rule 23..............................................5
      1. *Rule 23(a) is Satisfied* .....................................................................................6
      2. *Rule 23(b)(3) is Satisfied* ................................................................................7
      3. *Plaintiff's Counsel Should Be Appointed as Class Counsel* .......................8
   B. The Settlement is Fair, Adequate, and Reasonable.............................................8
   C. The Proposed Incentive Award is Fair, Adequate and Reasonable. ................10
   D. The Proposed Notice is Clear and Adequate ....................................................11
V.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.......................12
VI. CONCLUSION............................................................................................................13

i

# TABLE OF AUTHORITIES

Cases                                                                                                Page(s)

*Abdullah v. U.S. Sec'y Assocs.*,
   731 F.3d 952 (9th Cir. 2013) .................................................................................... 6
*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................. 7
*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ................................................................................................. 7
*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................... 10
*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) .................................................................................... 6
*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................. 11
*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................................................ 11
*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ............................................................................. 7
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 5, 8
*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................................... 9
*Nelson v. Avon Prod., Inc.*,
   2015 WL 1778326 (N.D. Cal. Apr. 17, 2015) .......................................................... 6
*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................. 8, 11
*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) .................................................................................. 1
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 5, 10
*Stevens v. Harper*,
   213 F.R.D. 358 (E.D. Cal. 2002) ............................................................................. 6
*Tierno v. Rite Aid Corp.*, No. C,
   2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ......................................................... 8
*Uschold v. NSMG Shared Servs.*, LLC,
   333 F.R.D. 157 (N.D. Cal. 2019) ............................................................................. 5
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................. 5, 6

Statutes

42 U.S.C. § 1981 ............................................................................................................ 2, 6
Cal. Civil Code § 52(a) ..................................................................................................... 9
California Civil Code §§ 51 ............................................................................................... 2

Rules

Fed. R. Civ. P. 23(a)(1) .................................................................................................................... 6
Fed. R. Civ. P. 23(a)(2) .................................................................................................................... 6
Fed. R. Civ. P. 23(a)(3) .................................................................................................................... 6
Fed. R. Civ. P. 23(a)(4) .................................................................................................................... 7
Fed. R. Civ. P. 23(a), (b) .................................................................................................................. 5
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 11
Fed. R. Civ. P. 23(e)(2) .................................................................................................................... 5
Fed. R. Civ. P. 23(g)(1)(A) .............................................................................................................. 8
Federal Rule of Civil Procedure 23(a) and (b)(3) ............................................................................ 1
Federal Rules of Civil Procedure 23(a) and 23(b)(3); (2) ............................................................. 13
Rule 23 ................................................................................................................................ 1, 5, 6, 8
Rule 23(a) ..................................................................................................................................... 6, 7
Rule 23(b)(3) ................................................................................................................................ 7, 8
Rule 23(c)(2) ................................................................................................................................. 11

Other Authorities

4 Newberg on Class Actions § 11:22 (4th ed. 2002) ....................................................................... 5

**PLAINTIFF'S UNOPPOSED MOTION**
**FOR PRELIMINARY SETTLEMENT APPROVAL**          CASE NO.: 3:23-CV-06704-TSH

# MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

## I. INTRODUCTION

The class-action Settlement Agreement and Release ("Settlement" or "Settlement Agreement") now before the Court is the product of more than seven months of direct discussions and negotiations between the Parties regarding the legal issues raised in this case, the merits of Plaintiff's claims, the accurate identification of proposed settlement class members, and the alleged potential damages.[1]

The Settlement, which was the result of arms-length and good faith negotiations conducted through direct communications between counsel, provides a cash Settlement Fund of $81,500 for the 63 members of the proposed Settlement Classes ($3,000 per California Class Member; $500 per National Class Member). The Settlement represents a recovery of seventy-five percent of the statutory damages for Plaintiff's California claims, and the Individual Settlement Payments will be distributed to the Class Members without need for them to complete a claim form or take any additional steps such as submitting documentation. In addition to monetary relief, the Settlement provides corrective action. First Tech has agreed to update its underwriting policies as appropriate to provide that applicants shall not be denied Residential Secured Loans solely on the basis of their immigration or citizenship status, eliminating the harm alleged in the Complaint for all future applicants.

For the reasons set forth below, the Settlement represents an excellent result for the Settlement Classes in this litigation and satisfies the requirements of Rule 23 and Ninth Circuit precedent. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019). The Parties have engaged in good-faith, arms-length settlement negotiations, including confirmatory discovery. Therefore, Plaintiff respectfully requests this Court grant preliminary approval of the Settlement. Granting preliminary approval will allow notice of the Settlement to be distributed to the Class Members to let them object, or opt-out, and for a hearing to be scheduled to consider whether to grant final approval.

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Luis L. Lozada in Support of Plaintiff's Unopposed Motion for Preliminary Settlement Approval ("Lozada Decl."). Capitalized terms not defined here shall have the meanings as defined in the Settlement Agreement.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ismael Antonio Rodriguez Perez is a resident of Oakland, California. Since 2012, Plaintiff has been a recipient of Deferred Action for Childhood Arrivals ("DACA"). As a DACA recipient, Plaintiff is authorized to work in the United States and has a "work only" Social Security Number. In June 2022, Plaintiff applied for a home equity line of credit ("HELOC") from Defendant First Tech Federal Credit Union ("First Tech"). Plaintiff was instructed that he must provide his legal residency card. Plaintiff informed First Tech that he did not have a Permanent Residence/Green card. First Tech then requested that Plaintiff upload a current I-94 visa. Plaintiff explained that his I-94 visa was expired, and that his only current documentation was his employment authorization card ("EAD"). First Tech then informed Plaintiff that neither an EAD nor an I-94 would be sufficient documentation on its own, and that DACA recipients are not eligible for the loan Plaintiff applied for. On August 1, 2022, First Tech denied Plaintiff's application and sent an adverse action notice indicating that "excessive obligations," "insufficient income for total obligations," and "unable to verify residency" were the principal reasons for the credit denial.

On December 29, 2023, Plaintiff filed a putative class-action complaint in this Court against First Tech, alleging claims for alienage discrimination in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981 ("Section 1981"), and the California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* (the "Unruh Act"). Compl., ECF No. 2. Plaintiff alleges that First Tech has a policy of denying applicants for Residential Secured Loans based on their immigration and/or citizenship status (the "Challenged Practice"). *Id*.

Since the time Plaintiff filed his Complaint, the Parties have engaged in ongoing good faith negotiations to resolve the claims alleged, ultimately resulting in an agreement in principle to settle this action. On July 10, 2024, the Parties filed a joint notice of settlement. ECF No. 29.

## III. PROPOSED SETTLEMENT

### A. The Settlement Classes

For settlement purposes only and consistent with the Parties' Settlement, Plaintiff seeks certification of the following Settlement Classes, defined as: (i) the "California Class," consisting of 20 individuals who, according to First Tech's records, were residing in California and applied

1 for a Residential Secured Loan with First Tech from December 29, 2021 through December 29, 2 2023, provided an EAD during the application process, and were denied their application solely 3 because of their immigration or citizenship status at the time they applied; and (ii) the "National 4 Class," consisting of 43 individuals who, according to First Tech's records, were residing in any 5 state of the United States other than California and applied for a Residential Secured Loan with 6 First Tech from December 29, 2021 through December 29, 2023, provided an EAD during the 7 application process, and were denied their application solely because of their immigration or 8 citizenship status at the time they applied.  Settlement §§ 1(c) and 1(q).

### B.   Settlement Overview

The Settlement provides two important forms of relief for Class Members: (1) corrective action under which First Tech will not deny Residential Secured Loan applications based solely on an applicant's immigration or citizenship status, unless required by law, rules, or regulations to do so, and will amend its underwriting criteria accordingly, *id.*, at § 2; and (2) Defendant will pay $81,500 to be used for individual payments by check made payable to each Class Member (the "Settlement Fund") to compensate Class Members for the alleged statutory violations and harm suffered, *id.* at §§ 1(m), 1(v) and 11.

#### 1.   Corrective Action

The Settlement provides for comprehensive corrective action to First Tech's underwriting criteria to eliminate any present or future risk of the Challenged Practice.  Specifically, First Tech agrees that it has ceased the Challenged Practice, and agrees that it will not deny Residential Secured Loan applications based solely on an applicant's immigration or citizenship status, unless required by law, rule, or regulation.  *Id.* at § 2.

#### 2.   Monetary Relief

First Tech agrees to create a $81,500 Settlement Fund that will be used to make individual payments in the amount of $3,000 by check to each California Class Member, and individual payments in the amount of $500 by check to each National Class Member.  *Id.* at § 1(m).  The Settlement Fund will be paid to Class Members; First Tech will separately pay the costs of administration; court approved attorneys' fees and costs; and incentive award.  *Id.* at § 1(v).

#### C. Distribution to Class Members

The Settlement does not require Class Members to submit a claim or take any action to claim the monies they are entitled to under the Settlement. *Id*. at § 11(a). Rather, payments will be made to Class Members by check payable to the Class Member and mailed to the Class Member's last known address. *Id*. Addresses will be updated by the Claims Administrator through skip-trace or other means. *Id.* at § 5(b).

#### D. Cy Pres Distribution of any Unclaimed Settlement Funds

If any checks mailed to Class Members remain uncashed for 120 days after the checks are sent ("Unclaimed Settlement Funds"), those funds do not revert to First Tech. *Id*. at §§ 1(w) and 12. Instead, any Unclaimed Settlement Funds will be paid to a *cy pres* recipient proposed by Class Counsel and approved by the Court. *Id*.

#### E. Notice to Class Members

The Settlement includes proposed English and Spanish language short form and long form notices to the class members that inform them of the terms of the Settlement and their rights to object to, or opt-out of, the Settlement, or to do nothing and receive the benefits of the Settlement and be bound by it. *Id*., Exs. 1-2. All Class Members will receive notice by mail, sent to the best available mailing address for each Class Member, updated as appropriate by running the Class Member's name through the National Change of Address Registry. Settlement § 5(b). For all notices that are returned as undeliverable, the Settlement Administrator will use standard skip tracing devices to obtain forwarding address information and re-mail the notice. *Id*. A website will also be established to provide Class Members with additional information relating to the Settlement. *Id*. at § 6(g).

#### F. Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award

Attorneys' fees, cost of litigation, and the cost of Notice and Administration shall be paid by First Tech in addition to the payments to Class Members. These expenses will be paid separate and apart from the Settlement Fund. *Id*. at § 1(v). Class Counsel will file a motion seeking approval for its attorneys' fees and costs. *Id*. at § 9. First Tech will not oppose an application for attorneys'

fees of up to $50,000. *Id*. § 11(c)(i). Further, Class Counsel estimates fees will not exceed $50,000. This estimate of attorneys' fees encompasses any work conducted by Class Counsel prior to settlement, and any future work conducted following the Court's order granting preliminary approval, including but not limited to: answering questions from Class Members; reviewing documentation; drafting and submitting a motion for attorneys' fees and cost, and a motion for final approval.

Class Counsel will also file a motion requesting that the Court approve a payment of the Settlement Administrator's costs up to $13,000. *Id.* at § 11(d). The Settlement Administrator shall be RG2 Claims Administration, LLC. A copy of the Administrator's brochure detailing its experience and services is attached to the Lozada Declaration as Ex. B.

Class Counsel shall also apply for a Service Award for the Named Plaintiff of up to $5,000 in recognition of his efforts in this case that have resulted in a benefit to all of the Class Members. *Id*. at § 11(b)(ii).

**IV.   ARGUMENT**

"Where, as here, parties reach an agreement before class certification, 'courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'" *Uschold v. NSMG Shared Servs.*, LLC, 333 F.R.D. 157, 166 (N.D. Cal. 2019) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). Thus, the court must make two determinations at the preliminary approval stage: first, the court must determine that the settlement classes meet the requirements for class certification, Fed. R. Civ. P. 23(a), (b); second, the court must determine on a preliminary basis that the settlement is fair, reasonable, and adequate such that notice should be sent to the proposed class, Fed. R. Civ. P. 23(e)(2). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011).

**A.   Certification of the Class is Proper Under Rule 23**

"The validity of use of a temporary settlement class is not usually questioned." ALBA CONTE & HERBERT B. NEWBERG, 4 NEWBERG ON CLASS ACTIONS § 11:22 (4th ed. 2002). For settlement purposes here, the Parties agree to certify the proposed Classes. Additionally, the

relevant factors under Rule 23 weigh in favor of certification.

### 1.     Rule 23(a) is Satisfied

<u>First</u>, numerosity is satisfied because joinder of the Class Members would be impractical. Fed. R. Civ. P. 23(a)(1).  First Tech's records identify 63 individual applicants who applied for consumer credit products and were denied based on their immigration status during the class period. *See Nelson v. Avon Prod., Inc.*, No. 13-CV-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015) ("Courts have repeatedly held that classes comprised of 'more than forty' members presumptively satisfy the numerosity requirement.").

<u>Second</u>, commonality is satisfied because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In determining whether commonality is met, the Supreme Court has instructed that the focus is on whether there are common issues of fact among class members and whether class treatment will "generate common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec'y Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, common issues include whether First Tech's Challenged Practice at the time Plaintiff applied for a Residential Secured Loan (i.e., HELOC loan) denied Plaintiff and Class Members the opportunity to receive Residential Secured Loans solely on the basis of their immigration or citizenship status, and whether First Tech violated Section 1981 or the Unruh Act.  *See Stevens v. Harper*, 213 F.R.D. 358, 377 (E.D. Cal. 2002) (in the civil rights context, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

<u>Third</u>, typicality is satisfied because the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (internal quotation marks omitted).  Here, Plaintiff's claims are typical of the Classes he seeks to represent because he alleges that: (1) he was legally residing in the United States as a DACA recipient, (2) he applied for a Residential Secured Loan from First Tech in 2022 in 2021, (3) using an EAD, and (4) his application was denied based on his

6

immigration or citizenship status.

<u>Fourth</u>, Plaintiff is an adequate class representative because he has and will adequately protect the interests of the Classes. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where a class representative "possess[es] the same interests and suffer[s] the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation marks omitted). Here, Plaintiff has the same interests as other Class Members and has shown that he can fairly and adequately protect Class Member's interests. Like all Class Members, Plaintiff was denied his Residential Secured Loan application by First Tech because he is not a U.S. citizen. Plaintiff has no conflicts of interest with the Class Members, and Class Members stand to benefit substantially from Plaintiff's pursuit of damages on their behalf.

Additionally, Plaintiff is represented by adequate counsel. The Mexican American Legal Defense and Educational Fund ("MALDEF") has extensive experience litigating complex civil rights class actions and Class Counsel has vigorously prosecuted this action on behalf of Plaintiff and have engaged in extensive settlement negotiations with First Tech. For these reasons, Class Counsel satisfies the adequacy requirement of Rule 23(a).

### 2.    Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that common questions predominate over individual ones and a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

Here, the Class is sufficiently cohesive to satisfy predominance. *Amchem*, 521 U.S. at 623. Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks omitted). Rather, the "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Amchem*, 521 U.S. at 626 (internal quotation marks omitted). Plaintiff challenges First Tech's Residential Secured Loan underwriting criteria and policies that apply to all Class Members. Common questions as to their nature and legality can be adjudicated collectively and will drive the resolution of class claims. *See Ellis v. Costco Wholesale*

*Corp.*, 285 F.R.D. 492, 509 (N.D. Cal. 2012) (predominance is satisfied as to discrimination claims where plaintiffs challenged "specific employment practices" that applied "companywide").

Whether Rule 23's superiority factor is met rests on factors like individual class members' desire to bring individual actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3). Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2006 WL 2535056, at *11 (N.D. Cal. Aug. 31, 2006). Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3. Plaintiff's Counsel Should Be Appointed as Class Counsel

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) resources that counsel can commit. Fed. R. Civ. P. 23(g)(1)(A). Class Counsel readily satisfy these criteria, as set forth above, and as demonstrated by activity in this case to date.

## B. The Settlement is Fair, Adequate, and Reasonable

Once the Court has found class certification is proper, it must determine if the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. In deciding whether to grant preliminary approval of a settlement, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Courts may consider and balance a number of other factors, such as: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; the extent of discovery completed . . . [and] [5] the experience and views of counsel[.]" *Hanlon*, 150 F.3d at 1026 (considering other factors not relevant here).

Here, the weight of factors demonstrates that the Settlement is fair, adequate, and reasonable. This is for four principal reasons.

*First*, Plaintiff faces substantial obstacles to full recovery, and defendant liability is not

8

guaranteed. Plaintiff's claims for discrimination on behalf of DACA recipients and non-permanent immigrants present a relatively novel theory with numerous unsettled issues—*e.g.*, whether immigration-status discrimination is cognizable under § 1981; whether the evidence would support an argument that First Tech's Challenged Practice was a pre-text for alienage discrimination, etc. Further, the National Class may face challenges demonstrating actual damages that can be calculated and proved on a class-wide basis. This Settlement mitigates these risks posed to the Class Members.

*Second*, the monetary and corrective action relief provide substantial value for Class Members. California Class Members will receive individual payments of $3,000, which amounts to 75% of the $4,000 statutory damages available under the Unruh Act for each discriminatory act. Cal. Civil Code § 52(a). National Class Members, who must demonstrate actual damages resulting from the Challenged Practice, will receive individual payments of $500. This is an excellent result for Class Members. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (recovery of 36% of total net loss is an "exceptional result"). Similarly, the Settlement provides prospective corrective action intended to eliminate the allegedly discriminatory practices. This corrective action relief represents the *maximum* degree of prospective relief available under the circumstances.

*Third*, the Settlement was reached as the result of lengthy, thorough, arms-length negotiations. *See* Lozada Decl. ¶¶ 17 and 20. Specifically, the Parties, through counsel: exchanged informal discovery, including credit application and records, copies of policies and procedures, and records regarding First Tech's membership base, to assess the merits of Plaintiff's discrimination claims, and the number of potentially affected Class Members. Following this exchange of discovery, and an evaluation of the terms of court-approved class action settlements in similar cases filed by Class Counsel against several banks, the Parties negotiated the terms of the Settlement, including the payments to individual Class Members and First Tech's obligation to pay for attorneys' fees, the cost of an incentive award and the cost of administration in addition to the payments to Class Members. *Id.* at ¶¶ 23–24.

Overall, the Parties exchanged multiple offers and counter-offers over this period until a

settlement in principle was reached. *Id*. at ¶ 16. Class Counsel initially demanded full payment of the potential damages for each class member. However, because of potential defenses to Class Member Claims, including through the development of discovery demonstrating non-discriminatory factors considered in First Tech's underwriting process, the Parties eventually agreed to payments to each class member of 75% of statutory damages, along with a commitment by First Tech to modify its underwriting criteria. The Parties also negotiated the source of funds to pay for Class Counsel's fees and costs, a Service Award, and the costs to implement the Settlement. The Court should take note that the parties *did not* negotiate the amount of Class Counsel's fees and costs as part of the settlement; they only negotiated the source of funds for the payment of fees and costs and the other costs associated with the Settlement. Following months of negotiations, the Parties agreed that Class Counsel should have "clear sailing" up to $50,000. Again, First Tech has no knowledge of the actual amount of Class Counsel's fees and costs.

*Fourth* and finally, the terms of the Settlement are comparable to the settlements approved by the Northern District of California in class action cases filed against Alliant, SoFi, and Wells Fargo.

Ultimately, this Settlement represents an excellent result for Class Members. It is the product of arms-length negotiations conducted over a period of months. There was no collusion or self-dealing. Accordingly, the Settlement is fair, adequate, and reasonable.

### C. The Proposed Incentive Award is Fair, Adequate and Reasonable.

Class Counsel will apply for an "Incentive Award" of $5,000 for the services performed by Plaintiff. An incentive award is permitted in the Ninth Circuit based on the services performed and time spent by the Named Plaintiff. *See Staton*, 327 F.3d at 977.

Here, an incentive award of $5,000 is reasonable to compensate Plaintiff for his time and effort assisting Class Counsel to prosecute the claims of the Class Members and negotiate a settlement on behalf of the Classes. The proposed incentive award is within the range approved by courts in the Ninth Circuit and this District, where "a $5,000 payment is presumptively reasonable." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

Further, Plaintiff faced heightened risk in bringing this action based on his lack of

permanent immigration status, which makes him an attractive target for harassment and vulnerable to potential immigration consequences. Incentive payments are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 948–59; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it necessary to induce an individual to participate in the suit."). Plaintiff had several telephone conversations and email communications with Class Counsel, provided documents, and provided background information. By bringing this action, Plaintiff placed himself at risk by publicizing his immigration status and revealing personal information. Therefore, without Plaintiff's participation, Class Counsel would not have been able to bring this action and achieve an exceptional result for the Classes.

### D. The Proposed Notice is Clear and Adequate

Rule 23(c)(2) requires that class notice be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

Here, the proposed long and short form notices are easily understandable and include: (1) pertinent details about the case, including the nature of Plaintiff's claims; (2) the definition and scope of the proposed Classes; (3) contact information for Class Counsel to answer questions; (4) the address for a website and telephone line maintained by the Settlement Administrator for Class Members to obtain important case documents and information; (5) instructions to file an objection or opt out of the Classes; and (6) the date, time, and location of the fairness hearing. Settlement, Exs. 1-2. Furthermore, the notice will be sent directly by mail to the individual Class Members identified in First Tech's records. Settlement § 5. To ensure notice is mailed to the best available address, the Settlement Administrator will run the names and addresses of the Class Members

through the National Change of Address Registry. *Id*. at § 5(b). In the event notice is returned undeliverable, the Settlement Administrator will use standard skip tracing devices to obtain forwarding address information. *Id*. Finally, given that some Class Members may only understand Spanish, the notice will be sent in both Spanish and English. *Id*. And, it will provide that questions be directed to MALDEF attorneys who are experienced dealing with bilingual and non-English speaking clients.

## V.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Based on the deadlines set forth in the Settlement and Plaintiff's proposed order granting preliminary approval, in consultation with First Tech, Plaintiff proposes the following schedule for finalizing and implementing the Settlement:

| **Preliminary Approval Hearing** | October 3, 2024 |
|---|---|
| Preliminary Approval Order | October 3, 2024 |
| Deadline for the Settlement Administrator to mail notice and for Settlement Website to go live | November 4, 2024 <br> [30 days after Preliminary Approval Order] |
| Bar Date to Opt Out or Object | December 2, 2024 <br> [60 days after Preliminary Approval Order] |
| Deadline to file Motion for Final Approval and Motion for Award of Fees, Costs, and Service Award | December 17, 2024 <br> [75 days after Preliminary Approval Order] |
| **Final Approval Hearing** | January 9, 2025 |
| Final Approval Order | January 9, 2025 |
| Deadline for Defendant to transfer the Settlement Fund, amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and fees and costs payable to the Settlement Administrator | January 20, 2025 <br> [10 days after Final Approval Order] |
| Effective Date (assuming no appeals) | February 10, 2025 <br> [30 days after Final Approval Order] |
| Settlement Administrator to pay amount awarded to Class Counsel for attorneys' fees and costs, any service award authorized by the Court, and Individual Settlement Payments | February 18, 2025 <br> [40 days after Final Approval Order] |

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify, for settlement purposes only, the Settlement Classes under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (2) grant preliminary approval of the Settlement; (3) appoint Plaintiff Ismael Antonio Rodriguez Perez as Class Representative, his counsel MALDEF as Class Counsel, and RG2 Claims Administration LLC as Settlement Administrator; (4) approve mailing to the Class Members the Proposed Notice, and the establishment of a settlement website; and (5) schedule a hearing for final approval of the Settlement after entry of the Preliminary Approval Order.

Dated: September 5, 2024                    Respectfully submitted,

*/s/ Luis L. Lozada*
Luis L. Lozada (Cal. Bar No. 344357)
Thomas A. Saenz (Cal. Bar No. 159430)
Eduardo Casas (Cal. Bar No. 346859)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
            llozada@maldef.org
            ecasas@maldef.org

*Attorneys for Plaintiff and
the Proposed Class*