UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAEL ANTONIO RODRIGUEZ PEREZ,<br><br>  Plaintiff,<br><br> v.<br><br>FIRST TECH FEDERAL CREDIT UNION,<br><br>  Defendant. | Case No. 23-cv-06704-TSH<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 31 |

## I.   INTRODUCTION

Plaintiff Ismael Antonio Rodriguez Perez brings this putative class action against First Technology Federal Credit Union, alleging claims for alienage discrimination in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981, and the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq. (the "Unruh Act"). Perez alleges First Tech has a policy of denying applicants for residential secured loans based on their immigration and/or citizenship status.

Pending before the Court is Perez's unopposed motion for preliminary approval of class action settlement. ECF No. 31. The Court finds this matter suitable for disposition without oral argument and **VACATES** the October 17, 2024 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.   BACKGROUND

**A.   Background**

Since 2012, Perez has been a recipient of Deferred Action for Childhood Arrivals ("DACA"). Compl. ¶ 7, ECF No. 1. As part of the DACA initiative, Perez received authorization

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 18.

1    to work in the United States and a Social Security Number. *Id.* First Union is a member-owned
2    and federally chartered credit union headquartered in San Jose, California. *Id.* ¶ 9. It offers
3    consumers a range of financial and credit products, including retail banking services, business and
4    life insurance products, personal loans, auto loans, credit cards, and home loans. *Id.* ¶ 11.

5            In June 2022, Perez applied for a home equity line of credit ("HELOC") from First Tech.
6    *Id.* ¶ 15. As part of the process, a First Tech loan officer instructed Perez that he must provide his
7    legal residency card. *Id.* ¶ 16. Perez informed First Tech that he did not have a permanent
8    residence/green card. *Id.* ¶ 19. First Tech then requested he upload a current I-94 visa. *Id.* Perez
9    explained that his I-94 visa was expired, and that his only current documentation was his
10   employment authorization card ("EAD"). *Id.* First Tech then informed Perez that neither an EAD
11   nor an I-94 would be sufficient documentation on its own, and that DACA recipients are not
12   eligible for the loan he applied for. *Id.* ¶ 20. On August 1, 2022, First Tech denied Perez's
13   application and sent an adverse action notice indicating that "excessive obligations," "insufficient
14   income for total obligations," and "unable to verify residency" were the principal reasons for the
15   credit denial. *Id.* ¶ 21.

16           On December 29, 2023, Plaintiff filed the present complaint against First Tech, alleging
17   claims under 42 U.S.C. § 1981 and the Unruh Act. Since that time, the parties have engaged in
18   ongoing negotiations to resolve the claims, ultimately resulting in an agreement in principle to
19   settle this action. ECF No. 29. Perez filed the present motion on September 5, 2024.

20   **B.**   **Settlement Terms**
21       **1.**   **Class**

22   For settlement purposes only, Perez seeks certification of the following Settlement Classes,
23   defined as: (i) the "California Class," consisting of 20 individuals who, according to First Tech's
24   records, were residing in California and applied for a Residential Secured Loan with First Tech
25   from December 29, 2021 through December 29, 2023, provided an EAD during the application
26   process, and were denied their application solely because of their immigration or citizenship status
27   at the time they applied; and (ii) the "National Class," consisting of 43 individuals who, according
28   to First Tech's records, were residing in any state of the United States other than California and

1 applied for a Residential Secured Loan with First Tech from December 29, 2021 through
2 December 29, 2023, provided an EAD during the application process, and were denied their
3 application solely because of their immigration or citizenship status at the time they applied.
4 Lozada Decl., Ex. A (Settlement Agreement) §§ 1(c) and 1(q).  ECF No. 31-2.

5 The Settlement provides two forms of relief for Class Members: (1) corrective action under
6 which First Tech will not deny residential secured loan applications based solely on an applicant's
7 immigration or citizenship status, unless required by law, rules, or regulations to do so, and will
8 amend its underwriting criteria accordingly, *id.* § 2; and (2) First Tech will pay $81,500 to be used
9 for individual payments by check made payable to each Class Member (the "Settlement Fund") to
10 compensate Class Members for the alleged statutory violations and harm suffered, *id.* §§ 1(m),
11 1(v) and 11.

### 2. Notice

The Settlement includes proposed English and Spanish language short form and long form notices to the class members that inform them of the terms of the Settlement and their rights to object to, or opt-out of, the Settlement, or to do nothing and receive the benefits of the Settlement and be bound by it. *Id.*, Exs. 1-2.  All Class Members will receive notice by mail, sent to the best available mailing address for each Class Member, updated as appropriate by running the Class Member's name through the National Change of Address Registry.  Settlement Agreement § 5(b). For all notices that are returned as undeliverable, the Settlement Administrator will use standard skip tracing devices to obtain forwarding address information and re-mail the notice.  *Id.*  In addition, the parties have informed the Court that First Tech may have email addresses for potential Class Members who provided emails on their loan applications, and for those applicants the Settlement Administrator can send the notice by email in addition to regular mail. ECF No. 33.  A website will also be established to provide Class Members with additional information relating to the Settlement.  Settlement Agreement § 6(g).

### 3. Payment Terms

First Tech agrees to create a $81,500 Settlement Fund that will be used to make individual payments in the amount of $3,000 by check to each California Class Member, and individual

United States District Court
Northern District of California

1  payments in the amount of $500 by check to each National Class Member. *Id*. § 1(m).  The

2  Settlement Fund will be paid to Class Members; First Tech will separately pay the costs of

3  administration, court approved attorneys' fees and costs, and incentive award. *Id*. § 1(v).

4        The Settlement does not require Class Members to submit a claim or take any action to

5  claim the monies they are entitled to under the Settlement. *Id*. § 11(a).  Rather, payments will be

6  made to Class Members by check payable to the Class Member and mailed to the Class Member's

7  last known address. *Id*.  Addresses will be updated by the Claims Administrator through skip-

8  trace or other means. *Id*. § 5(b).

### 4. Cy Pres Distribution of any Unclaimed Settlement Funds

10  If any checks mailed to Class Members remain uncashed for 120 days after the checks are

11  sent ("Unclaimed Settlement Funds"), those funds do not revert to First Tech. *Id*. §§ 1(w) and 12.

12  Instead, any Unclaimed Settlement Funds will be paid to a cy pres recipient proposed by Class

13  Counsel and approved by the Court. *Id*.

### 5. Release

15  In exchange for the settlement, the following release applies:

> **GENERAL RELEASE.** Except as to the rights and obligations provided for under the terms of this Agreement, Named Plaintiff, on behalf of himself and each Class Member who does not opt-out (collectively, "Releasors"), hereby releases and forever discharges Defendant, and all of its past, present and future predecessors, successors, parents, subsidiaries, divisions, employees, affiliates, assigns, officers, directors, members, representatives, attorneys, insurers and agents (collectively, the "Releasees") from any and all losses, fees, charges, complaints, claims, debts, liabilities, demands, obligations, costs, expenses, actions, and causes of action of every nature, character, and description, whether known or unknown, asserted or unasserted, suspected or unsuspected, fixed or contingent, which Releasors now have, own or hold against any of the Releasees that arise out of and/or relate to the facts and claims alleged in the Complaint, including any claims relating to or arising out of the Challenged Practice.

25  *Id.* ¶ 13.

### 6. Attorneys' Fees and Expenses, Settlement Administrator's Costs, and Class Representative Service Award

28  Attorneys' fees, cost of litigation, and the cost of notice and administration shall be paid by

4

First Tech in addition to the payments to Class Members. These expenses will be paid separate and apart from the Settlement Fund. *Id*. at § 1(v). Class Counsel will file a motion seeking approval for its attorneys' fees and costs. *Id*. § 9. First Tech will not oppose an application for attorneys' fees of up to $50,000. *Id*. § 11(c)(i). Class Counsel estimates fees will not exceed $50,000. Mot. at 5. This estimate of attorneys' fees encompasses any work conducted by Class Counsel prior to settlement, and any future work conducted following the Court's order granting preliminary approval, including but not limited to: answering questions from Class Members; reviewing documentation; drafting and submitting a motion for attorneys' fees and costs, and a motion for final approval. *Id.*

Class Counsel will also file a motion requesting that the Court approve a payment of the Settlement Administrator's costs up to $13,000. Settlement Agreement § 11(d). Perez requests the Court appoint RG2 Claims Administration, LLC as the Settlement Administrator. Mot. at 5.

Class Counsel shall also apply for a Service Award for Perez of up to $5,000 in recognition of his efforts in this case. *Id*. § 11(b)(ii).

### III.   LEGAL STANDARD

A class action settlement must be "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), based on the following fairness factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (cleaned up). However, the Court cannot fully assess these until the final approval hearing. Thus, at this stage "a full fairness analysis is unnecessary," *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (cleaned up), and "the settlement need only be potentially fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has

no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (cleaned up).

Whether a settlement agreement has been negotiated before a class has been certified or after, courts must also undertake an additional search for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *In re Bluetooth*'s red-flag factors to post-class certification settlement approvals).

### IV.   DISCUSSION

#### A.   Class Certification

Perez requests the Court certify the proposed class for settlement purposes only. Class certification under Federal Rule of Civil Procedure 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification laid out by Rule 23(b). Perez relies on Rule 23(b)(3) and must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* At the same time, trial "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia*

6

1   *Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quoting *Gen. Tel. Co. of the Nw. Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)). As the proposed class consists of approximately 63 individuals, the Court concludes that Perez has satisfied his burden to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable. *See Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone.") (internal quotation marks and citation omitted).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id.* at 359 (internal quotation marks and alterations omitted).

Courts generally find commonality where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members[]" and divergent ways in which these practices affect individual class members, if any, do not undermine the finding of commonality. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976). Here, common issues include whether First Tech's challenged practice at the time Perez applied for a HELOC loan denied him and class members the opportunity to receive residential secured loans based solely on their immigration or citizenship

7

1  status, and whether First Tech violated § 1981 or the Unruh Act. *See Stevens v. Harper*, 213

2  F.R.D. 358, 377 (E.D. Cal. 2002) (in the civil rights context, "commonality is satisfied where the

3  lawsuit challenges a system-wide practice or policy that affects all of the putative class

4  members."). Accordingly, the commonality requirement is satisfied for settlement purposes.

### 3. Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). To satisfy this test, claims need not be "identical." *Armstrong*, 275 F.3d at 869.

Perez alleges (1) he was legally residing in the United States as a DACA recipient, (2) he applied for a residential secured loan from First Tech, (3) using an EAD, and (4) his application was denied based on his immigration or citizenship status. Though some factual differences may exist among class member, the claims arise from the same events or course of conduct and are based upon the same legal theories. Given the structure of the settlement, the proposed class satisfies the typicality requirement for settlement purposes. *Wehner v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ("Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory."). The typicality requirement is thus satisfied.

### 4. Adequacy

"[A]dequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). No party has suggested, and

1  the Court has not found, any evidence in the record suggesting that Perez has any conflict of

2  interest with the other class members. He shares common claims with the other proposed

3  members of the class and seeks the same relief they do. Additionally, class counsel, the Mexican

4  American Legal Defense and Educational Fund, has submitted a declaration showing they are

5  highly experienced in class actions and immigrants' rights matters. Lozada Decl. ¶¶ 4-12. The

6  Court concludes Perez and his counsel will adequately represent the proposed class.

### 5. Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks and citation omitted).

Here, the proposed class is sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting class members predominate over any questions that may affect only individual members. Perez challenges First Tech's residential secured loan underwriting criteria and policies that apply to all class members. Common questions as to their nature and legality can be adjudicated collectively and will drive the resolution of class claims. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509 (N.D. Cal. 2012) (predominance is satisfied as to discrimination claims where plaintiffs challenged "specific employment practices" that applied "companywide").

Whether Rule 23's superiority factor is met rests on factors like individual class members' desire to bring individual actions and the utility of concentrating the litigation in one forum. Fed. R. Civ. P. 23(b)(3). Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular

1   forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, 2006 WL 2535056, at *11 (N.D.
2   Cal. Aug. 31, 2006).  Further, a class resolution is superior to other available means for the fair
3   and efficient adjudication of the controversy.  *See Hanlon*, 150 F.3d at 1023.  The superiority
4   requirement involves a "comparative evaluation of alternative mechanism of dispute resolution."
5   *Id.*  The alternative method of resolution would be individual claims, subject to proof, for
6   relatively small amounts of damages, which would be uneconomical for potential plaintiffs.
7   Therefore, a class resolution is superior to any other available methods.  Accordingly, common
8   questions of law and fact predominate, and this dispute is best adjudicated on a representative
9   basis.

The Court concludes that provisional certification of the proposed class is appropriate for the purposes of settlement.

**B.     Settlement Process**

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  It must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396 (cleaned up).  Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

The process here was fair.  "'An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.'" *Harris*, 2011 WL 1627973, at *8 (quoting *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct.28, 2010).  The settlement agreement is the result of more than seven months of direct discussions and negotiations between the parties regarding the legal issues raised in this case, the merits of Perez's claims, the accurate identification of proposed settlement class members, and the alleged potential damages.  The parties, through counsel: exchanged informal discovery, including credit application and records, copies of policies and procedures, and records regarding First Tech's membership base, to assess the merits of Perez's discrimination claims, and the number of potentially affected class members.  Following this exchange of discovery, and an evaluation of

10

the terms of court-approved class action settlements in similar cases filed by class counsel against several banks, the parties negotiated the terms of the settlement, including the payments to individual class members and First Tech's obligation to pay for attorneys' fees, the cost of an incentive award and the cost of administration in addition to the payments to class members. Lozada Decl. ¶¶ 23–24. The parties exchanged multiple offers and counter-offers over this period until a settlement in principle was reached. *Id.* ¶ 16. Class counsel initially demanded full payment of the potential damages for each class member, but based on potential defenses to the class member claims, including through the development of discovery demonstrating nondiscriminatory factors considered in First Tech's underwriting process, the parties eventually agreed to payments to each class member of 75% of statutory damages, along with a commitment by First Tech to modify its underwriting criteria. *Id.* The Court also notes the parties did not negotiate the amount of class counsel's fees and costs as part of the settlement; they only negotiated the source of funds for the payment of fees and costs and the other costs associated with the settlement. This factor weighs in favor of granting preliminary approval.

## C.     Obvious Deficiencies

At this stage, there are no obvious deficiencies in the Settlement Agreement, and this factor weighs in favor of granting preliminary approval.

## D.     Preferential Treatment

The Court next examines whether the settlement agreement "improperly grant[s] preferential treatment." *In re Tableware*, 484 F. Supp. 2d at 1079. The only preferential treatment is a service award to Perez, subject to Court approval. Such "[i]ncentive awards are fairly typical in class action cases . . . to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). The service award is within the range of possible approval, and this factor weighs in favor of preliminary approval. *See Staton v. Boeing Co.*, 327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving incentive awards in the range of $2,000 to $25,000).

### E. Range of Possible Awards

The last inquiry focuses on "substantive fairness and adequacy" and considers a plaintiff's "expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080 (cleaned up); *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" (cleaned up)). "[A] proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 ("[T]he Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.").

Here, the settlement agreement is within the range of possible approval. After initial review of the parties' agreement, the Court requested the parties answer this question: "If the parties did not settle and this matter were to proceed to trial, what do they estimate would be First Tech's total exposure? At this stage, can the parties estimate how the settlement amount compares to First Tech's potential damages?" ECF No. 32. In response, the parties provided calculations estimating First Tech's total exposure, as well as an analysis of how they arrived at their estimate. ECF No. 33. The parties estimate First Tech's risk-adjusted total exposure is $123,000. *Id.* The gross settlement fund of $81,500, which is just over 65% of First Tech's estimated potential exposure. This weighs in favor of preliminary approval. *See Dimercurio v. Equilon Enterprises LLC*, 2022 WL 17669711, at *5 (N.D. Cal. Dec. 14, 2022) (finding settlement agreement was within the range of approval where it equaled roughly 37% of defendant's potential total exposure). On the other hand, continued litigation brings a risk Perez and the class will receive nothing. This factor weighs in favor of preliminary approval.

### F. Class Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly

12

state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

The proposed class notice includes each of the seven requirements above. In addition, after its preliminary review of the parties' proposed settlement, the Court asked them to address the following issues:

> Class Notice
> Under the terms of the parties' agreement, all class members will be mailed a notice of the proposed settlement and its terms. However, Rule 23 requires the "best practicable notice," and in most circumstances a single mailed notice does not meet this requirement. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 (9th Cir. 2019). Would it be feasible to use another method as well, such as email?
>
> Objections/Exclusions
> The parties' agreement provides that any class member who wishes to be excluded from the settlement or to object to its terms must do so by mailing a written exclusion/objection to the settlement administrator. Would it be feasible to use another method as well, such as email or a form on the settlement website created by the settlement administrator?

ECF No. 32. In response to the first question, the parties state:

> First Tech may have email addresses for potential Class Members who provided emails on their loan applications. The Parties are in the process of verifying whether email addresses exist for each potential Class Member. For those Class Members who provided First Tech with email addresses, the Settlement Administrator can send the Notice by email in addition to regular mail. If an email bounces back because of an incorrect address, the Settlement Administrator can perform a "skip trace" to locate a potentially valid email address. . . . Thus, the Parties believe that email notice can be provided in addition to the mail notice described in the Settlement Agreement.

ECF No. 33.

In response to the second question, the parties state:

13

>The Settlement Administrator will provide an email address on the Notice forms for potential Class Members to email opt-outs or objections to the Settlement. The Settlement Administrator will also set up forms on the website for potential Class Members to use to submit opt-outs or objections. The Parties have submitted with this joint statement proposed forms for opt-outs and objections that can be posted to the Settlement Website.

*Id.*

The Court finds these proposed changes adequately address its concerns and therefore approves the notice plan with these changes. The parties shall add the email and website form options for opt-outs/exclusions to the following sections of the proposed notice at ECF No. 31-2:

1) "SUMMARY OF YOUR OPTIONS" table, "EXCLUDE YOURSELF FROM THE SETTLEMENT" and "OBJECT TO THE SETTLEMENT" (ECF p. 16 of 23);

2) "YOUR OPTIONS," No. 6 "What are the critical deadlines" (ECF pp. 17-18 of 23);

3) "EXCLUDING YOURSELF FROM THE SETTLEMENT," No. 12 "How do I exclude myself from the Settlement?" (ECF p. 19 of 23); and

4) "OBJECTING TO THE SETTLEMENT," No. 15 (ECF pp. 19-20 of 23).

### G.     Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

Class counsel will file a separate motion seeking approval for its attorneys' fees and costs. Settlement Agreement § 9. First Tech will not oppose an application for attorneys' fees of up to $50,000. *Id*. § 11(c)(i). This estimate of attorneys' fees encompasses any work conducted by class counsel prior to settlement, and any future work conducted following the Court's order granting preliminary approval. At this stage, the request is not so out of bounds as to warrant denying preliminary approval. Accordingly, class counsel shall file a motion for attorneys' fees and costs within 21 days of this Order, which the Court will separately assess along with any

14

1   objections. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010)

2   (noting that Rule 23(h) "requires that any class member be allowed an opportunity to object to the

3   fee motion").  The motion shall include declarations and billing records so that the Court may

4   determine an appropriate lodestar figure, and to allow class members the opportunity to object to

5   the requested fees.  *See id.* at 995 (holding that class members must "have an adequate opportunity

6   to oppose class counsel's fee motion").

### H. *Cy Pres* Award

"District courts may approve settlements with *cy pres* provisions that affect only a portion of the total settlement fund." *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1111 (9th Cir. 2021).  Here, if any checks mailed to class members remain uncashed for 120 days after the checks are sent, those funds do not revert to First Tech.  Settlement Agreement §§ 1(w) and 12.  Instead, any such funds will be paid to a *cy pres* recipient proposed by class counsel and approved by the Court.  *Id*.  At the final approval stage, the Court will assess whether the selected *cy pres* beneficiary is "tethered to the nature of the lawsuit and the interests of the . . . class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (cleaned up).

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for preliminary approval. The Court (1) conditionally certifies the proposed class for the purposes of settlement only; (2) preliminarily approves the settlement agreement and notice plan (with the additions specified above in Section IV.F); and (3) preliminarily appoints the Mexican American Legal Defense and Educational Fund as class counsel, Perez as class representative, and RG2 Claims Administration, LLC as settlement administrator.  The Court **ORDERS** as follows:

1. Within 10 business days of this Order granting preliminary approval, First Tech will provide class members' information to the Settlement Administrator; within 15 calendar days thereafter, the Settlement Administrator will mail (and email, for Class Members who provided emails on their loan applications) the approved class notice to class members.

2. When the Settlement Administrator mails out the class notice, Class counsel shall file a copy of the final class notice with the Court.

15

3. Within 21 days of this Order, Class counsel shall file a motion for attorneys' fees and costs.  First Tech may file an opposition within 14 days thereafter, and class counsel may file a reply within 7 days thereafter.

4. Perez shall file a motion for final settlement approval on December 12, 2024.

5. The Court will hear argument on the motion for attorneys' fees and costs and the motion for final settlement approval at the Final Approval Hearing, which will take place in person on January 23, 2025 at 10:00 a.m.

6. If the parties wish to adjust any of the above dates, they shall submit a stipulation.  The stipulation shall cite, with line numbers if applicable, the portions of this Order, the Settlement Agreement, or the approved class notice that are affected by the stipulation.  The parties shall also ensure that before the approved class notice is sent to class members, it is amended to reflect any dates that are changed by the stipulation (i.e., the date on which class counsel will file their motion for attorneys' fees and costs; the date of the final approval hearing).

**IT IS SO ORDERED.**

Dated: October 8, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge